## Callebs, et al. v. Ruble, et al.

(Decided November 9, 1916.)

### Appeal from Garrard Circuit Court.

1. Judicial Sales—Executors and Administrators—Settlement of Estates—Lien Creditors.—Under section 428 of the civil code providing, in part, that all persons having liens upon the property left by the decedent should be made parties, if a person who has a lien on land ordered to be sold for the purpose of settling the estate is not made a party, this will be ground for setting aside the sale if it appears that the failure to make him a party prejudiced the substantial rights of the widow and children.

2. Executors and Administrators—Settlement of Estates—Unmatured Debts.—In a suit to settle the estate of a deceased person in which it becomes necessary to sell land encumbered by lien debts, some of which are not due, the court should order a sale on the usual terms and conditions subject to the lien of the unmatured debts and make such orders as are necessary to protect the purchaser in his payments to the lien holder as the debts fall due. This can be done by giving the purchaser credit on his bonds by the amount of the unmatured debts, which will remain a lien on the land until paid. But the lien holder and the administrator may consent that the unmatured debts may be treated as due.

J. M. ROBISON and H. CLAY KAUFFMAN for appellants.

ROBERT HARDING and EMMETT PURYEAR for appellee, H. C. Ruble.

R. H. TOMLINSON and EVERETT B. HOOVER for appellee, Wm. Scott.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In a suit brought by the administrator of G. W. Callebs, who died in December, 1914, for a settlement of his estate, it appears from the petition that Callebs left surviving him his widow, and three children under fourteen years of age; that he left personal estate of the value of one thousand dollars; that at the time of his death the decedent was the owner of a tract of land containing 93 1-3 acres conveyed to him on January 2, 1914, by H. C. Ruble and wife in consideration of nine thousand dollars, three thousand dollars of which was paid in cash, the balance to be paid in five equal payments of twelve hundred dollars, due respectively in January, 1915, 1916, 1917, 1918 and 1919, all of which were unpaid

and a lien on the land. The petition averred that it would be necessary to sell the land in order to pay the debts of the decedent, and that the land could not be divided without materially impairing its value.

The case was referred to the commissioner for settlement in accordance with the prayer of the petition, and the commissioner filed his report which showed, among other things, that H. C. Ruble had claims against the estate in the form of purchase money lien notes on the land described in the petition amounting to about six thousand dollars. That the Simpson-Willis Lumber Co. had a claim that was also a lien on the land for about five hundred dollars. Other claims brought the preferred indebtedness up to $7,010, and there was a general indebtedness of $1,544. Subsequently, there was a judgment reciting that the tract of land could not be · divided without materially impairing its value, and a sale was ordered to be made on the first day of a regular term of the Garrard county court.

On June 22, 1915, the commissioner filed his report of sale, from which it appears that the land, which had been appraised at $6,065, was sold on March 22, 1915, to William Scott for $7,005. Exceptions to this sale were filed by the infant defendants by their statutory guardian, Dora Callebs, and by Dora Callebs individually, the exceptions pointing out that the sale should be set aside because the land was encumbered at the time the petition was filed and at the time of the sale by lien debts amounting to $5,584 in favor of Christopher, the vendor of Ruble, and that Christopher was not made a party to the suit nor was his lien debt set up in any way in the suit. It was further set out that this lien of Christopher on the land prevented persons from bidding at the sale, and that the land was reasonably worth ten thousand dollars and at a fair public sale would bring over nine thousand dollars.

Scott, the purchaser, also filed exceptions to the sale upon the ground that Christopher, who was not a party to the suit, had a lien on the land for $5,584, which was unpaid, and because the debts of Ruble were not due.

The administrator, Henry Moore, also filed an uncontroverted affidavit in connection with the exceptions, in which he said that the fact that Christopher had a lien on the land for unpaid purchase money at the time of the judgment and sale amounting to about $5,500, which

amount was unpaid, prevented persons who otherwise would have bid on the land from bidding on or purchasing it. He further said that the land was reasonably worth $9,500 and would bring $9,000 at a public sale if the title to the land was clear and the sale fairly conducted. The widow also filed an uncontroverted affidavit setting out in substance the same thing.

The court overruled all motions and exceptions to set aside the sale made by the widow and children, as well as the purchaser, Scott, and from the order overruling the exceptions and confirming the sale this appeal is prosecuted. The only person who is insisting on a confirmation of the sale and an affirmance of the judgment is Ruble, the lien holder.

A number of other exceptions setting out reasons why the sale should be set aside were filed, but we may rest our decision and reverse the judgment on the ground that Christopher was not a party to the suit or required to assert his lien on the land.

Section 428 of the civil code, relating to the settlement of estates of deceased persons, provides, in part, that in a suit for the settlement of the estate, "The representatives of the decedent and all persons having a lien upon or an interest in the property left by the decedent, or any part thereof, and the creditors of the decedent, so far as known to the plaintiff, must be parties to the action as plaintiffs or defendants." Under this section, in a suit to settle the estate of a deceased person in which it is sought to sell land for the payment of debts, all persons having liens on the land should be made parties plaintiff or defendant to the suit or else they should come into the suit by an intervening petition and set up their lien debts. If this course is not pursued and the land of the decedent is sold to pay only a part of the lien debts, it is plain that much confusion would result and that in many instances the land would not bring its fair value because bidders would be deterred from bidding on land they knew to be encumbered by liens that were not asserted in the suit in which it was sold.

This very condition arose in this case, as is shown by the uncontroverted affidavits of Moore, the administrator, and Mrs. Callebs. The land did not bring its full or fair value or the price it would have brought except for this Christopher lien, and while the inadequacy of

price would not of itself be sufficient to authorize the setting aside of the sale, the fact that this inadequacy was due to the existence of this Christopher lien furnishes good reasons why the sale should be set aside on the exceptions of the widow and children.

It is further insisted that it was error to order a sale until all of the Ruble lien notes had matured, and section 694 of the civil code is relied on in support of this exception. This section of the code, however, does not apply to suits to settle estates. If it did, the settlement of estates in which it became necessary to sell land might have to be postponed for several years and this would work in many cases serious injustice to creditors and perhaps to the heirs of the decedent. We are therefore of the opinion that in a suit to settle the estate of a deceased person in which it becomes necessary to sell land encumbered by lien debts, the court may order a sale for the purpose of paying all the lien debts, although some of them have not matured.

But unless the holder of the debt and the personal representative of the deceased consent, this will not work a maturity of the amounts not due or precipitate their payment, as they need not be paid until they mature according to the contract. When a condition of this sort arises, and the lien holder and the personal representative do not agree to precipitate the maturity of the paper, the court should order a sale on the usual terms and conditions, subject to the lien of the unmatured debts, and make such orders as are necessary to protect the purchaser in his payments to the lien holder as they fall due. This can be done by giving the purchaser credit on his bonds by the amount of the unmatured debts, which will remain a lien on the land until paid.

For the reasons indicated, the judgment is reversed, with directions to set aside the sale and make such orders as may be necessary to bring Christopher before the court so that he may assert his lien on the land. If the administrator and the lien holder do not consent that the maturity of the unmatured lien debt shall be precipitated, the judgment should also be corrected so as to direct the commissioner to give the purchaser credit on his bonds by the amount of the unmatured lien debt.